## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

CITY OF SAINT PAUL, MINNESOTA,
    15 W. Kellogg Blvd., 400 City Hall,
    Saint Paul, MN 55102,

INTERSTATE RENEWABLE ENERGY COUNCIL,
    125 Wolf Road, Suite 100,
    Albany, NY 12205,

PLUG IN AMERICA,
    1270 S Alfred St #351268,
    Los Angeles, CA 90035,

ELEVATE ENERGY,
    332 S. Green Street, Suite 300,
    Chicago, IL 60607,

SOUTHEAST COMMUNITY ORGANIZATION,
    2105 1/2 Old Hudson Road,
    Saint Paul, MN 55119,

ENVIRONMENTAL DEFENSE FUND,
    257 Park Ave. S.,
    New York, NY 10010,

        *Plaintiffs*,

    v.

CHRISTOPHER WRIGHT, in his official capacity as
Secretary of Energy,
    1000 Independence Ave., SW,
    Washington, DC 20595,

UNITED STATES DEPARTMENT OF ENERGY,
    1000 Independence Ave., SW,
    Washington, DC 20595,

RUSSELL VOUGHT, in his official capacity as Director of the
Office of Management and Budget,
    725 17th Street NW,
    Washington, DC 20503,

OFFICE OF MANAGEMENT AND BUDGET,
    725 17th Street NW,
    Washington, DC 20503,

        *Defendants*.

Civil Action No.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.    "Central both to the idea of the rule of law and to our own Constitution's guarantee of equal protection is the principle that government and each of its parts remain open on impartial terms to all who seek its assistance." *Romer v. Evans*, 517 U.S. 620, 633 (1996).

2.    This case involves a betrayal of this fundamental American principle.

3.    In the run-up to the recent lapse in government funding, the President made clear that, in the event of a shutdown, his administration would take punitive action against states whose citizens vote for the opposition political party.

4.    Defendants the Department of Energy (DOE) and the Office of Management and Budget (OMB) made good on that threat the very first day of the shutdown. On October 1, the Director of OMB, Defendant Russell Vought, announced on X:



**Russ Vought** ✔ ▥
@russvought

Nearly $8 billion in Green New Scam funding to fuel the Left's climate agenda is being cancelled. More info to come from @ENERGY.

The projects are in the following states: CA, CO, CT, DE, HI, IL, MD, MA, MN, NH, NJ, NM, NY, OR, VT, WA

2:09 PM · Oct 1, 2025 · **6.1M** Views

5.    In all sixteen states listed by Vought where projects were terminated, the citizens of that state voted for Vice President Harris over President Trump in the 2024 election. And in all sixteen states, the citizens of that state currently have elected two Senators who caucus with the Democratic party. Vought's post thus openly flaunted that, in terminating DOE awards, the administration targeted states associated with the opposition party.

6.     The intentional discrimination underlying the terminations became even clearer when DOE released details on the terminated awards the next day. Secretary Wright announced that DOE had terminated 321 financial awards totaling roughly $7.5 billion. For all 321 awards—100%—the grantee's address on file with the federal government is in a state that voted for the President's opponent and has two Democratic-caucusing Senators. And nearly 98% of the terminated awards had a primary place of performance in a state with that same voting history. One need not be a statistician to understand this partisan skew did not happen by chance.

7.     Plaintiffs in this action are among those harmed by this discrimination. They are grantees, subgrantees, and entities affiliated with terminated awards that would deliver substantial benefits for communities and people across the country. They did nothing wrong other than being located in, or carrying out an award in, a state whose citizens engage in political speech that the government disfavors.

8.     The Constitution does not countenance Defendants' conduct. Under bedrock equal protection principles, the government must have some legitimate state interest when it treats one group differently from a similarly situated group. Bare animus, political or otherwise, is not a legitimate government interest. Animus and political retribution are the only explanations for the differential treatment of terminated and non-terminated DOE awardees here.

9.     Defendants' actions also violate the First Amendment. As the Supreme Court held just last year, "the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech . . . through private intermediaries." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 198 (2024). Here, Defendants have targeted private intermediaries—including Plaintiffs—to punish the speech of the citizens of the states where grantees reside or where the DOE awards would be carried out.

10.    Defendants' constitutional violations are plain, and the harms to Plaintiffs and the communities they intended to serve are all too real. Unless the terminations are immediately unwound, Plaintiffs will need to lay off staff or not pursue important projects that were funded by the awards, including projects designed to make lives more affordable by lowering the cost of energy, expand access to clean affordable energy, and ensure healthier lives through common sense measures to reduce pollution. The projects impacted make buildings more efficient, expand access to zero-emitting electric vehicles (EVs), help local governments reduce barriers to clean affordable solar energy use for their residents and businesses, and prevent the leaking of methane and other harmful pollution from oil and gas development through solutions that prevent waste and reduce toxins.

11.    The Executive Branch's wielding of federal funds as a cudgel for partisan discrimination is unconstitutional and sets a dangerous precedent for the trillions of dollars that the Executive Branch dispenses each year. It cannot be left to stand.

## PARTIES

12.    Plaintiff Interstate Renewable Energy Council (IREC) is a nonprofit organization working to expand consumer access to clean, affordable energy. Since it was founded in 1982, IREC has made clean energy possible for millions of Americans through cutting-edge solutions that advance renewable energy, electric grid modernization, and energy efficiency.

13.    Plaintiff Plug In America is a nonprofit organization with a mission to accelerate the transition to affordable and accessible plug-in vehicles and charging through education, advocacy, and research that promotes the use of plug-in cars, trucks, and sports utility vehicles powered by renewable electricity. Plug In America is a national leader in providing brand-neutral consumer education on electric and plug-in hybrid vehicles through experiential events, online

information, public surveys, and dealer engagement. Plug In America is based in Los Angeles, California and was incorporated in 2008.

14.    Plaintiff Elevate Energy (Elevate) is a nonprofit, nonpartisan organization that seeks to ensure that everyone has clean and affordable heat, cooling, power, and water in their homes and communities. Elevate designs and implements programs in states throughout the country to help achieve these goals. Elevate is based in Chicago, Illinois.

15.    Plaintiff City of Saint Paul is a municipal corporation organized and existing under and by virtue of the laws of the State of Minnesota. It is a home rule charter city.

16.    Plaintiff Southeast Community Organization (SECO) is a nonprofit community organization that represents District 1 in Saint Paul, Minnesota. SECO represents four neighborhoods in Saint Paul: Eastview, Conway, Battle Creek, and Highwood.

17.    Plaintiff Environmental Defense Fund (EDF) is a nonprofit, nonpartisan organization that is guided by science and dedicated to finding practical and durable solutions to protect public health and the environment that are grounded in affordability, including working to reduce harmful and wasteful methane emissions from the oil and gas sector. EDF collaborates with businesses and communities, works with policymakers, and has offices and numerous members throughout the United States including in the District of Columbia.

18.    Defendant Christopher Wright is the Secretary of Energy and is sued in his official capacity.

19.    Defendant Department of Energy (DOE) is an agency of the United States government.

20.    Defendant Russell Vought is the Director of the Office of Management and Budget and is sued in his official capacity.

21.    Defendant Office of Management and Budget (OMB) is a federal agency within the Executive Office of the President.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under federal law, including the U.S. Constitution.

23.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because this action seeks relief against federal agencies and officials acting in their official capacities; at least one defendant is located in this district; and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### *DOE Awards Billions in Funding Through Congressionally Mandated Programs*

24.    DOE carries out a vast number of programs, many prescribed by statute, through grants and cooperative agreements with private parties and state and local governments. Congress annually appropriates funds for these purposes, and has also appropriated tens of billions of dollars for such awards in legislation including the Infrastructure Investment and Jobs Act (IIJA) of 2021 and the Inflation Reduction Act of 2022. In the IIJA, for instance, large bipartisan majorities of Congress appropriated $62 billion to DOE to carry out projects advancing energy efficiency, affordability, resiliency, and independence, among other purposes.

25.    Congress appropriates funds to specific offices within DOE to carry out programs. As relevant here, Congress has appropriated funds to the following six offices in recent years to issue grants and cooperative agreements: the Office of Energy Efficiency and Renewable Energy, the Office of Clean Energy Demonstrations, the Office of Fossil Energy, the Office of

Manufacturing and Energy Supply Chains, the Grid Deployment Office, and the Advanced Research Projects Agency.

26.     The Office of Energy Efficiency and Renewable Energy (EERE) was created in 1973 and is "responsible for renewable energy and end-use energy efficiency technology development," including "issuing grants for home energy efficiency and state energy planning, establishing minimum energy conservation standards for appliances and equipment, and providing technical support."[1] EERE received $16.3 billion in appropriations through the IIJA. EERE also receives funding through annual appropriations bills, including $3.5 billion in funding for each of fiscal years 2024 and 2025.

27.     The Office of Clean Energy Demonstrations (OCED) "is a multi-technology office with demonstrations that include clean hydrogen, carbon management, advanced nuclear reactors, long-duration energy storage, industrial demonstrations, demonstrations in rural areas and on current and former mine land, and more."[2] Congress appropriated $5.8 billion for OCED in the Inflation Reduction Act.

28.     DOE's Office of Fossil Energy (FE) conducts research, development and demonstration that focuses on promoting energy security, sustaining American leadership and innovation, and developing breakthrough technologies that will ultimately lower American energy costs. FE received $865 million in appropriations in each of fiscal years 2024 and 2025, including to fund research and development into technologies related to the use of fossil fuels.

---

[1] Martin C. Offutt & Lexie Ryan, Cong. Rsch. Serv., IF 13118, *DOE Energy Efficiency and Renewable Energy (EERE) Appropriations, FY 2026* (2025).
[2] DOE, Office of Clean Energy Demonstrations, https://www.energy.gov/oced/office-clean-energy-demonstrations.

29.    The Office of Manufacturing and Energy Supply Chains (MESC) works to advance energy manufacturing deployment and supply chain security. MESC received $19 million in appropriations in each of the last two years to help eliminate vulnerabilities in energy supply chains.

30.    The Grid Deployment Office (GDO) works to catalyze the development of electric infrastructure across the country by maintaining and investing in critical generation facilities; developing and upgrading high-capacity electric transmission lines nationwide; and deploying transmission and distribution infrastructure and technologies. GDO received $10.5 billion in appropriations in each of the last two years to enhance grid flexibility and improve the resilience of the power system.

31.    DOE's Advanced Research Projects Agency-Energy (ARPA-E) received $460 million in each of the last two years to support cutting-edge energy technologies. ARPA-E's mission is to help launch energy companies and technologies that have high potential impact.

32.    Plaintiffs all received or stood to benefit from awards from these DOE offices.

33.    For example, Plaintiff IREC received three awards from EERE. The first was for $6.9 million to support IREC's "Charging Smart" project, which is a comprehensive, nationwide EV charging program that provides no-cost training to local governments across the country. The second was a $4.8 million award to support DOE's "SolSmart Program," a national program to help local governments reduce barriers to solar energy use for residents and businesses. The third was a $1.2 million award to help IREC develop consensus recommendations to address challenges with clean energy code enforcement and permitting approvals. IREC's three awards were on the list of DOE awards terminated in early October 2025. IREC originally received

termination notices from DOE on October 2 and then received superseding termination notices on October 10, making the effective date of the terminations October 10, 2025.

34.    Plug In America received a $5 million award from EERE to conduct its "Plugstar Consumer EV Education Campaign." DOE obligated the full $5 million award to Plug In America at the time of the award in August 2024. Through the award, Plug In America aimed to reach five million consumers and auto dealers with information about electric and plug-in hybrid electric vehicles, charging, and incentives. Plug In America planned to reach consumers through a range of different channels, including paid media placements, electric vehicle ride-and-drive events, dealership sales training, and expansion of community EV organizations. The award was intended to support the campaign through July 2027. The program is fully staffed, well underway, and has already reached millions of consumers. Plug In America's award was on the list of DOE awards terminated in early October 2025. Plug In America originally received a termination notice from DOE on October 2 and then received a second, superseding termination notice on October 10, making the effective date of the termination October 10, 2025.

35.    Elevate Energy received $4.5 million from EERE to support its "Building Performance Resource Hub" project. The award was issued as part of DOE's "Resilient and Efficient Codes Implementation" program. DOE obligated the full $4.5 million award to Elevate at the time of the award in October 2023. Elevate was using these funds to help building owners, engineers, and contractors adopt updated building energy codes that result in increased energy efficiency. Elevate accomplished this by providing in-class or on-the-job training and technical support to building professionals. The award was supposed to provide funding for Elevate through December 2027. Elevate's award was on the list of DOE awards terminated in early October 2025. Elevate originally received a termination notice from DOE on October 2 and then

received a second, superseding termination notice on October 9, making the effective date of the

termination October 9, 2025.

36.    Plaintiff City of Saint Paul was a subawardee on a $1.7 million EERE award to

the American Lung Association designed to organize and support underserved communities to

design, implement, and use EV charging. The City of Saint Paul's subaward was for $560,844 to

expand the City's EV Spot Network deep into Saint Paul's East Side neighborhoods, where

residents disproportionately bear the burdens of the City's transportation energy system and do

not equitably experience the benefits of access to clean, affordable, and reliable transportation.

Those burdens include below-average transit service and auto ownership, and above average

pollution burden. Substantial portions of East Side neighborhoods are designated as USDOT

Transportation Disadvantaged Communities. Among other things, Saint Paul has been using

grant funds to purchase and install new EV charging hubs in East Side neighborhoods. The City

of Saint Paul was specifically named as a subawardee in the American Lung Association's

proposal to DOE, and was also included in a subrecipient budget spreadsheet that the American

Lung Association submitted to DOE. The award to the American Lung Association was on

DOE's list of awards terminated in early October 2025. American Lung Association received a

termination notice on October 2, 2025.

37.    Plaintiff SECO was also a subawardee on the $1.7 million EERE award to the

American Lung Association. SECO's subaward was for $100,000 to enable SECO to promote

EV expansion in the neighborhoods that it serves. SECO was specifically named as a

subawardee in the American Lung Association's proposal to DOE.

38.    Plaintiff EDF worked with grantees on DOE's list of awards terminated in early

October 2025 on collaborative science-based solutions to reduce methane emissions. EDF

formally served on the advisory committee for a $210 million award issued by the Fossil Energy

Office to the Gas Technology Institute. The goal of the award was to accelerate the mitigation of

methane emissions from small operators of oil and gas wells and associated pipeline

infrastructure, furthering EDF's organizational interest in reducing these harmful and wasteful

emissions. This award was on DOE's list of awards terminated in early October 2025. On

information and belief, Gas Technology Institute has not yet received a termination letter from

DOE in connection with this award.

     39.    EDF also works with Colorado State University to measure and mitigate methane

emissions, and a core EDF initiative to strengthen science-based solutions to address methane

was being crucially advanced by several awards that the school received. One was a $3.5 million

award by the Fossil Energy Office to fund the university's Methane Emissions Testing and

Evaluation Center 2.0 (METEC 2.0), which was developing testing capabilities for methane

emissions detection and measurement technologies that were unique or not widely available.

METEC 2.0 would have provided EDF an opportunity to conduct testing of methane sensing and

measurement technology. This award was on DOE's list of awards terminated in early October

2025. On information and belief, Colorado State University originally received a termination

notice from DOE on October 2, and then received a second superseding notice on October 10,

making the effective date of the termination October 10, 2025.

     40.    EDF's core work on science-based and practical solutions to reduce oil and gas

methane emissions was also being crucially advanced by a $20 million award by the Fossil

Energy Office to Colorado State University for detection and measurement of methane emissions

from oil and gas operations through the North-Central Methane Center. The project's data would

have aided EDF in its scientific efforts to better characterize methane emissions and its policy

and collaborative efforts to reduce those emissions. In addition, Colorado State would have held

a competitive process for collecting these data, in which EDF would have been able to compete.

This award was on DOE's list of awards terminated in early October 2025. On information and

belief, Colorado State University has not yet received a termination letter from DOE in

connection with this award.

41.     EDF was also working with Colorado State University in connection with a $300

million award by the Fossil Energy Office for a Collaborative Approach to Reducing Emissions

at Marginal Conventional Wells, which would have furthered EDF's organizational objective of

reducing such emissions. This award was on DOE's list of awards terminated in early October

2025. On information and belief, Colorado State University has not yet received a termination

letter from DOE in connection with this award.

42.     The DOE awards that Plaintiffs received or directly benefited from, all of which

DOE terminated or slated for termination in October 2025 (the "Challenged Terminations") are

summarized in the following table:

| Award Description | Number | Awardee | DOE Office | Amount |
|---|---|---|---|---|
| Developing Consensus Recommendations to Address Challenges with Clean Energy Code Enforcement and Permitting Approvals | EE0011801 | Interstate Renewable Energy Council | EERE | $1.2 million |
| SolSmart Program | EE0009951 | Interstate Renewable Energy Council | EERE | $4.8 million |
| A Comprehensive Nationwide EV Charging Recognition and Technical Assistance Program (Charging Smart) | EE0011131 | Interstate Renewable Energy Council | EERE | $6.9 million |
| Plugstar Consumer EV Education Campaign | EE0011133 | Plug In America | EERE | $5 million |

| Building Performance Resource Hub | EE0010930 | Elevate Energy | EERE | $4.5 million |
|---|---|---|---|---|
| Organizing and Supporting Underserved Communities to Design, Implement, and Use EV Charging Infrastructure | EE0010622 | American Lung Association (Saint Paul and SECO as subawardees) | EERE | $1.7 million |
| Methane Emissions Reduction Program –Well Emissions and Leakage Limitation Check | FE0032658 | Gas Technology Institute (EDF participating) | FE | $210 million |
| Methane Emissions Testing and Evaluation Center | FE0032276 | Colorado State University (EDF participating) | FE | $3.5 million |
| Methane Emissions Reduction Program – North-Central Methane Center | FE0032699 | Colorado State University (EDF participating) | FE | $20 million |
| Methane Emissions Reduction Program – Collaborative Approach to Reducing Emissions for Marginal Conventional Wells | FE0032657 | Colorado State University (EDF participating) | FE | $300 million |

### *DOE Terminates Funding to Recipients Exclusively in "Blue" States*

43.     On May 15, 2025, Secretary Wright announced that DOE had been conducting a "review" of financial assistance awards issued under the prior administration. A press release stated that Wright had "concern[s]" about certain awards issued by the prior administration, but did not specify the awards or further explain his concerns.[3] Wright stated that DOE would conduct a "focused review[]" for certain awards "on a case-by-case basis."[4]

---

[3] DOE, *Secretary Wright Announces New Policy for Increasing Accountability, Identifying Wasteful Spending of Taxpayer Dollars*, May 15, 2025, https://www.energy.gov/articles/secretary-wright-announces-new-policy-increasing-accountability-identifying-wasteful.
[4] *Id.*

44.     In the days and weeks leading up to a possible lapse in appropriations at the end of September 2025, President Trump threatened to retaliate against congressional Democrats and their voters should they not agree to fund the government on the President's terms. For instance, on September 30, President Trump told reporters: "We can do things during the shutdown that are irreversible, that are bad for them and irreversible by them, like cutting vast numbers of people out, cutting things that they like, cutting programs that they like."[5]

45.     Similarly, after the shutdown had begun, President Trump posted to Truth Social that he had a meeting with OMB Director Vought, the Director of the Office of Management and Budget, to "determine which of the many Democrat Agencies, most of which are a political SCAM, he recommends to be cut, and whether or not those cuts will be temporary or permanent."[6] President Trump continued: "I can't believe the Radical Left Democrats gave me this unprecedented opportunity."[7]

46.     In meetings and interviews throughout the shutdown, President Trump openly and proudly confirmed his administration's intent to target perceived Democratic interests and priorities. During a cabinet meeting on October 9, the President stated that his administration was "only cutting Democrat programs."[8]

47.     Consistent with the President's wishes, on October 1, the very first day of the shutdown, Defendants targeted DOE grants in states that voted for Vice President Harris in the 2024 presidential election. That day, it was not DOE or Secretary Wright that announced the

---

[5] Ricard Cowan, et al., *Trump Warns Democrats of "Irreversible" Actions in Government Shutdown*, Yahoo News (Sept. 30, 2025), https://perma.cc/UVV3-MXKS.
[6] @realDonaldTrump, https://truthsocial.com/@realDonaldTrump/posts/115304455138824245.
[7] *Id.*
[8] Kevin Breuninger, *Trump Threatens to Use Government Shutdown to Cut "Popular Democrat Programs*," CNBC (Oct. 9, 2025), https://perma.cc/KZ69-5DGG.

terminations, but rather OMB Director Vought. Vought posted on X: "Nearly $8 billion in Green New Scam funding to fuel the Left's climate agenda is being cancelled. More info to come from @ENERGY."[9] Vought then highlighted that the "[t]he projects are in the following states: CA, CO, CT, DE, HI, IL, MD, MA, MN, NH, NJ, NM, NY, OR, VT, WA."[10]

48.     On October 2, Wright announced that DOE was terminating 321 awards, spanning 223 projects, for which the agency had previously awarded $7.5 billion.[11] The vast majority of projects were funded by DOE's Office of Energy Efficiency and Renewable Energy, Office of Clean Energy Demonstrations, and Office of Fossil Energy.

49.     DOE's press release asserted that these projects "did not adequately advance the nation's energy needs, were not economically viable, and would not provide a positive return on investment of taxpayer dollars."[12] But the release contained no specifics to support those assertions or identification of the awards that were terminated.

### Data Further Confirms That Defendants Targeted Awards in Blue States

50.     The data unmistakably confirms that Defendants targeted DOE grants for termination in October 2025 based on the political views of the citizens of the state associated with the grant.

51.     On information and belief, on or around October 1, 2025, Defendants transmitted to members of Congress a list of the 321 awards slated for termination. That list was made public in various news reports.[13]

---

[9] @RussVought, https://x.com/russvought/status/1973450301236715838.
[10] *Id.*
[11] DOE, *Energy Department Announces Termination of 223 Projects, Saving Over $7.5 Billion* (Oct. 2, 2025), https://perma.cc/WV7Q-QWA5.
[12] *Id.*
[13] *See, e.g.*, Maeve Allsup, *Scoop: These Are the 321 Awards DOE Is Canceling*, Latitude Media (Oct. 2, 2025), https://perma.cc/B9F7-483X.

52.     The website usaspending.gov contains authoritative information on every grant awarded by DOE and other agencies, including the address on file of each awardee and the primary place of performance of each award.

53.     For each and every one of the 321 awards on DOE's list of those slated for termination, the address on file for the grantee is in a state that voted for Vice President Harris and currently has two Democratic-caucusing Senators.

54.     In addition, the primary place of performance for 314 of the 321 awards slated for termination (*i.e.*, 98%) was a state that voted for Vice President Harris and has two Democratic-caucusing Senators.

55.     Each Plaintiff awardee received a nearly identical form letter from DOE stating that the project "no longer effectuates program goals regarding feasibility due to a shift in the Department of Energy's priorities" or that the project "does not effectuate the Department of Energy's priorities of ensuring affordable, reliable, and abundant energy to meet growing demand and/or addresses [sic] the national emergency declared pursuant to Executive Order 14156." The termination notices did not suggest that the awardees failed to comply with the terms and conditions of the award or that they were deficient in their performance in any manner. On information and belief, all funding recipients whose awards were terminated received substantially similar notices stating that their projects were terminated solely due to a shift in agency priorities.

56.     According to public reporting, DOE had originally sent a broader list of more than 600 awards to OMB for potential termination.[14] The broader list included awards to grantees

---

[14] Brian Dabbs, et al., *DOE Floats New Cuts to Hundreds of Clean Energy Grants*, E&E News (Oct. 7, 2025), https://perma.cc/5B76-VGQP.

based in states throughout the country, including Arizona, Indiana, Florida, Ohio, Louisiana, North Carolina, North Dakota, Oklahoma, South Carolina, Tennessee, Texas, Utah, West Virginia, and Wisconsin—all of which voted for President Trump in the 2024 election.[15] But Defendants did not terminate *any* awards to grantees located in those states in October 2025. Instead, according to one energy lobbyist (and as the evidence demonstrates), "they basically just pulled out most, if not all, blue state projects, and that's what they announced as cuts."[16]

57.    Even in programs where awards were made across all 50 states, such as the Grid Resilience and Innovation Partnership program, only projects in states that voted for Vice President Harris were cancelled in October 2025, while similar projects in states that voted for President Trump were not.

58.    DOE terminated 79 projects in California alone, totaling more than $2 billion in federal funding. One of the projects would have provided backup battery power for a children's hospital in Madera, California.

59.    DOE's October termination of awards in states that voted against the President was a part of the administration's broader efforts to harm such states since the shutdown. As of October 14, the administration had "frozen or canceled nearly $28 billion that had been reserved for more than 200 projects primarily located in Democratic-led cities, congressional districts, and states."[17] An analysis by the New York Times showed that the vast majority of funding cuts

---

[15]List of Awards, https://perma.cc/GA87-D96M.
[16]Dabbs, *supra* note 14.
[17] Tony Romm & Lazaro Gamio, *Trump Targets Democratic Districts by Halting Billions During Shutdown*, N.Y. Times (Oct. 14, 2025), https://www.nytimes.com/interactive/2025/10/14/us/ trump-grants-democrat-districts-government-shutdown.html

during the shutdown have been to grantees in states—and even congressional districts—that have

recently voted for Democrats, especially in New York, California, and Chicago.[18]



**Total affected funding, by congressional district**

Note: Grants are grouped by the congressional district of the grant recipient. The work funded by the grant could occur in the same district, a different district, or across multiple districts and states.

60.     These cuts included a freeze of $18 billion in funding for two major New York

City infrastructure projects: the Second Avenue subway and Hudson River tunnel. The

administration also froze $2.1 billion that had been pledged to Chicago for transit upgrades,

including an extension of its rail system into the South Side.

***Defendants' Abrupt, Unlawful Terminations Will Harm Plaintiffs***

61.     Defendants' termination of billions of dollars in funding will hurt consumers and

communities, increase prices, and result in thousands of lost jobs. It removes support for

innovation of technologies that are critical to ensuring clean, reliable and affordable energy, and

---

[18] *Id.*

inhibits the collaboration among industries, states, academic institutions, and nonprofits that was intended to take place under the canceled awards. And it will be devastating to Plaintiffs and the other awardees who had structured their work in reliance on the federal government upholding its promises to provide this funding.

62.    For example, Plaintiff IREC has already had to cancel 18 partner contracts as a result of the termination of its award funding its "Charging Smart" program, and has had to turn away over 100 cities and counties seeking technical assistance under the program due to the termination. It has had to cancel 10 partner contracts as a result of the termination of its award funding its "SolSmart" program, and no longer has the resources and funding to do its work related to safe building codes and standards involving solar, storage, and EVs. IREC has been forced to lay off staff and will need to cut more positions if funding is not restored.

63.    Plug In America's funding from its terminated award made up approximately half of the organization's annual revenue. Without the award, Plug In America will need to lay off staff, cancel partner contracts, and dramatically reduce its educational programming, including ride and drive events, its training for EV dealers, and a call center for consumers interested in purchasing EVs.

64.    Plaintiff Elevate Energy has already had to take staff off of programs supported by its terminated award, and will need to consider layoffs if the award is not quickly restored. Elevate Energy was using its award to provide training to building owners, engineers, and contractors on updated building codes that would increase energy efficiency, consistent with DOE's Resilient and Efficient Codes Implementation program. Elevate Energy will need to shut down this work entirely if the award is not restored.

65.     Plaintiff City of Saint Paul has made significant investments in contracting for the purchase and installation of EV chargers, and unless funding is restored, will be at risk of breaching those contracts and associated financial loss. Additionally, the City has expended significant staff resources to complete the first stage of its project, which will have been time wasted if it cannot complete EV installation in accordance with its plans. The City will also suffer reputational harm and loss of community trust if it cannot complete this project.

66.     Plaintiff SECO, a small nonprofit community organization in Saint Paul, hired two additional staff members to help with community outreach promoting EV expansion in reliance on its funding. Unless its funding is restored imminently, SECO will have to lay off these staff members and cease the outreach supported by the award.

67.     Plaintiff EDF will also suffer significant harm. EDF was formally affiliated with, relying upon, or was participating in several of the grants listed for termination in October 2025 as part of a core, long-standing science-based initiative to address oil and gas methane emissions in collaboration with scientists, industry, technology providers, policymakers, and community-based organizations.

68.     For example, EDF intended to pursue the possibility of testing its methane emissions measurement technology using new testing capabilities that were under development at Colorado State University's METEC 2.0. With the support of DOE's $3.5 million award to METEC, EDF would have been able to test this technology at substantially reduced costs. Now, EDF will either have to forgo this testing or incur significant additional costs, and will need to spend more resources advocating for development of additional testing programs. EDF also worked with institutions seeking federal funding under the Methane Emissions Reduction Program to develop detection and measurement of methane emissions from oil and gas

operations at regional scale. EDF devoted significant staff time to helping advance a rigorous science-based approach across regional measurement projects. Now that Colorado State University's $20 million North-Central Methane Center grant has been slated for termination, EDF will not be able to compete for funding to collect these data, and will not be able to rely on the program to obtain critical data for EDF's scientific efforts to better characterize methane emissions and collaborative work to reduce those emissions. EDF will need to raise and expend additional resources to collect these or otherwise access data.

69.    EDF collaborated with the Gas Technology Institute (GTI) in securing its $210 million award by devoting time and expertise, including a letter explaining EDF's commitment as an advisory committee member. The goal of the award was to accelerate the mitigation of methane emissions at small operators' low-producing oil and gas wells and associated infrastructure, a core organizational priority of EDF. As a result of the grant cancellation, EDF will no longer be able to advise on the implementation of the grant, including on how resources could be deployed to advance science-based, low cost and collaborative solutions. EDF has and will need to continue to devote additional resources to developing alternative ways to accomplish its goal of reducing methane emissions from smaller, dispersed sources.

70.    Similarly, EDF has engaged with Colorado State University in connection with its $300 million award for a Collaborative Approach to Reducing Emissions at Marginal Conventional Wells. The goal of the award was to develop and implement a solution ecosystem, which would have reduced methane emissions at these sites across the country anchored in science and collaborative solutions. As a result of the grant termination, EDF will need to devote additional resources to developing alternative ways to accomplish its goal of reducing methane emissions from marginal conventional wells.

## *FIRST CLAIM FOR RELIEF*

### Violation of the Fifth Amendment's Equal Protection Guarantee

71.    Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs.

72.    The Due Process Clause of the Fifth Amendment prohibits the federal government from denying equal protection of the laws. *See Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954).

73.    In identifying DOE grants to terminate in October 2025, Defendants intentionally treated Plaintiffs differently from similarly situated entities based on the political views of, and votes cast by, the citizens of the state where the prime grantee was located, and the state where the relevant award would be primarily performed.

74.    Defendants' reasons for treating Plaintiffs differently from similarly situated entities are arbitrary and irrational.

75.    Defendants' differential treatment of Plaintiffs is motivated by animus against the political views of and votes cast by the citizens of the states associated with the awards, based on the location of the prime grantee or where the award would be performed.

76.    Defendants lack any rational, legitimate, or compelling governmental interest in treating Plaintiffs differently from similarly situated entities.

77.    As a direct and proximate result of Defendants' differential treatment, Plaintiffs have suffered concrete economic and non-economic harm, including loss of funding, loss of funding opportunities, loss of access to federally funded programs and resources, loss of investments, costs of mitigation, diversion of resources, reputational harm, and chilled association.

78.    Through the actions above, Defendants have violated the Due Process Clause of the Fifth Amendment.

### SECOND CLAIM FOR RELIEF

### Violation of the First Amendment

79.    Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs.

80.    Defendants' October 2025 mass termination of awards held by recipients in "blue" states also violates the First Amendment.

81.    "At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). The government may not "use [its] power . . . to punish or suppress disfavored expression." *Id.*

82.    Relatedly, "the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (quotations omitted).

83.    In addition, "the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech . . . through private intermediaries." *Vullo*, 602 U.S. at 198.

84.    Here, Defendants took adverse action against "intermediaries"—including Plaintiffs—to punish and retaliate against the speech and viewpoints of the citizens of the states where prime grantees were located, and the states where the relevant award would be primarily performed. Defendants terminated the relevant awards in October 2025 because of the political views of these citizens and the votes they cast in recent elections. Defendants would not have

terminated these awards in October 2025 but for that protected speech and association. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (explaining that voting is protected by the First and Fourteenth Amendments).

85.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered concrete economic and non-economic harm, including loss of funding, loss of funding opportunities, loss of access to federally funded programs and resources, loss of investments, costs of mitigation, diversion of resources, reputational harm, and chilled association.

## REQUEST FOR RELIEF

**NOW, THEREFORE,** Plaintiffs request judgment in their favor against Defendants as follows:

1.    Declare that the Challenged Terminations were unlawful, in violation of the Fifth Amendment's Due Process Clause and the First Amendment.

2.    Preliminarily and permanently enjoin the Challenged Terminations.

3.    Preliminarily and permanently enjoin Defendants to restore the awards terminated pursuant to the Challenged Terminations.

4.    Award Plaintiffs reasonable costs and attorneys' fees; and

5.    Award such other relief as this Court may deem just and proper.

Dated: November 10, 2025                              Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar 1016621)
Stephen K. Wirth (D.C. Bar 1034038)
John Robinson (D.C. Bar 1044072)
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave. NW, Suite 301
Washington, DC 20016

Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

*Counsel for Plaintiffs Environmental Defense Fund, Plug in America, Elevate Energy, Interstate Renewable Energy Council, and Southeast Community Organization*

Vickie L. Patton (CO Bar 30370)*
Peter Zalzal (CO Bar 42164)*
Rosalie Winn (CO Bar 52662)*
Stephanie Jones (NY Bar 5590724)*
2060 Broadway, Suite 300
Boulder, CO 80302
(720) 837-6239
vpatton@edf.org

*Counsel for Plaintiff Environmental Defense Fund*

LYNDSEY OLSON
Saint Paul City Attorney

By: */s/ Kelsey McElveen*
Kelsey McElveen*
Office of the City Attorney
15 W. Kellogg Blvd., 400 City Hall
Saint Paul, MN 55102
(651) 226-8710

*Counsel for Plaintiff Saint Paul, Minnesota*

*Pro hac vice forthcoming