IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITY OF SAINT PAUL, MINNESOTA *et al.*,

    Plaintiffs,

  v.

CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy *et al.*,

    Defendants.

Case No. 1:25-cv-03899-APM

**JOINT SUPPLEMENTAL FILING**

The parties respectfully submit the following statements with respect to the Court's questions at the conclusion of the December 11, 2025 hearing and the Court's Minute Order issued the same day.

### PLAINTIFFS' STATEMENT

Plaintiffs' position is that, for any stipulation to be adequate to resolve the case at this junction, Defendants must admit that they treated one class of entities (including Plaintiffs) that received or benefited from Department of Energy awards differently from a similarly situated class of entities, solely based on whether the prime recipient of the given award resides in a Blue State.

Plaintiffs inquired with Defendants on Friday, December 12 whether Defendants would agree to stipulated language to the above effect (Plaintiffs' proposed stipulated language is reproduced below). But Defendants never answered. Instead, Defendants informed Plaintiffs that they would be proposing their own language for a stipulation. Having now reviewed Defendants' proposed language, Plaintiffs do <u>not</u> believe that proposed language is sufficient to enter final judgment at this time, without further factual development.

Plaintiffs respond to the Court's questions against this backdrop.

1. *Deferral of Preliminary Injunction Ruling*:

If Defendants are unwilling to agree to a sufficient stipulation as described above, Plaintiffs consent to the Court deferring ruling on a preliminary injunction, having a short period of discovery, and then holding a trial, but, respectfully, only if trial could be held in January rather than March.[1] Plaintiffs are mindful of the Court's busy schedule and very much appreciate the

---

[1] Plaintiffs' consent is conditional on Defendants' commitment, stated below, that they will not to de-obligate funds with respect to the ten awards at issue in this litigation until final judgment has been entered in this case. Plaintiffs respectfully request that the Court enter an order to that effect.

1

Court's willingness to hold an expedited trial. However, for some Plaintiffs, the difference between a January and March trial date would be extremely material. For instance, Plaintiff Plug In America anticipates the need to conduct significant layoffs in the new year if there is no prospect for relief until after a trial in March. As described in Plaintiffs' preliminary injunction motion, Plug In America's terminated award constitutes approximately 50% of its anticipated revenue for 2026.

With respect to Defendants' request to hold a status conference before discovery proceeds or a trial date is set, Plaintiffs oppose that request to the extent that it would result in further delay. Plaintiffs defer to the Court on the need for a status conference, but given the time-sensitivity described above, Plaintiffs respectfully ask that any such conference not delay discovery moving forward and a trial date being set. If a status conference does ultimately resolve outstanding issues, enabling the Court to enter final judgment now, the Court could always pull down the trial date and revoke the authorization of discovery.

2. *Stipulation*:

From Plaintiffs' perspective, any stipulation must admit the core factual allegation underlying Plaintiffs' equal protection and First Amendment claims: that Defendants chose the 314 terminated awards for termination in early October, and not other similarly situated awards, solely because the prime awardees for those 314 awards reside in Blue States. Such an admission would render discovery unnecessary, enabling the Court to resolve the final merits at this junction. To this end, Plaintiffs proposed the following stipulation to Defendants on December 12:

- The 314 U.S.-based DOE awards terminated in early October 2025 were similarly situated to other DOE awards not terminated at that time (such as those identified in Exhibit G to the Jacobson Declaration); and

- The sole reason that Defendants terminated the 314 awards in early October 2025—and not the similarly situated, non-terminated awards—was that a majority of voters in the

prime awardee's state of residence voted for the Democratic candidates in the most recent presidential and senatorial elections.

To resolve relevant factual issues regarding the three relevant awards for which DOE has not transmitted a termination letter, which are described further below, Plaintiffs also seek a stipulation that:

- The three awards that EDF either participated in, relied on, or would have benefitted from and that were not "definitized" are similarly situated to other "non-definitized" DOE awards that were not on the October 2, 2025 list of terminated awards, and DOE will need to take actions to formally end and de-obligate funds from these three awards that DOE has not presently decided to take for the similarly situated awards not on the October 2 list.

As set forth in Defendants' Statement below, Defendants state that they will stipulate as follows: "The selection of which DOE grant termination decisions were included in the October 2025 notice tranche was influenced by whether a grantee's address was located in a State that tends to elect and/or has recently elected Democratic candidates in state and national elections (so-called 'Blue States')."

Defendants' proposed stipulation is insufficient for numerous reasons. First and foremost, it likely does not establish all of the facts necessary to grant judgment on Plaintiffs' equal protection and First Amendment claims: Defendants do not stipulate that the 314 terminated awards were similarly situated to other awards, which were not terminated. And Defendants do not stipulate that *the* reason the 314 awards were treated differently from similarly situated awards, in being selected for termination in early October, was because a majority of voters in the prime awardee's state of residence voted for the Democratic candidates in the most recent presidential and senatorial elections. Defendants' equivocal statement that the selection of these awards "was influenced by" the awardees' residence in Blue States is not sufficient. Furthermore, Defendants' statement in footnote 5 misleadingly suggests that "partisan politics"

3

were, in fact, used as "a proxy for legitimate policy considerations." Defendants submitted no evidence whatsoever to that effect, and the record contradicts it. Moreover, Defendants offer the stipulation after including an Introduction that reasserts the position that the awards were terminated because they purportedly no longer effectuate policy goals and priorities. In light of these deficiencies, Plaintiffs do not consent to consolidation of trial on the merits based on this stipulation.

3. *Awards Not Definitized*:

With respect to the three awards for which DOE has not sent termination letters, and that government counsel represented at the hearing were not "definitized," Plaintiffs are able to provide the following information.

EDF either participated in, relied on, or would have benefitted from these awards. Colorado State University (CSU) was the prime recipient for two of these awards (FE0032657, FE0032699), and the Gas Technology Institute (GTI) was the prime recipient for the third (FE0032658). For all three awards, DOE issued a notice of award in December 2024 that legally obligated the full award amount to the award. And DOE subsequently executed a cooperative agreement for each award in January 2025, which set forth the total obligated amount of the award and the underlying legal authorities. Defendants acknowledge in passing the December notice-of-award letters in their statement below, but, remarkably, neglect to mention the subsequently executed cooperative agreements.

Even worse, Defendants erroneously assert that DOE assumed "no financial obligation" in issuing these awards. As mentioned, the notices of awards on their face "obligated" the full award amount, and as OMB explains in its Circular A-11, an "obligation" means "a binding agreement that will result in outlays, immediately or in the future." OMB Circular A-11 § 20.3,

4

https://www.whitehouse.gov/wp-content/uploads/2025/08/a11.pdf.[2] DOE thus legally committed the full award amounts to these three awards, notwithstanding the notice-of-award letters called for routine steps to "definitize" the awards. Funds obligated to an existing award must be "de-obligated" in order to close out the award, and before the funds may be used for another purpose. If there were any doubt, Defendant's own statement below confirms that full award amounts remain obligated to these three awards: "None of the funding for the ten financial awards at issue in this case, including the three specifically mentioned in Part II.B. of this filing, has been de-obligated."

Thus, if DOE has determined not to go forward with these awards, as is apparent from the inclusion of the awards on the October 2 termination list, it will need to take action to close out the awards, including de-obligating the funds. DOE's taking such steps would be treating these awards differently from similarly situated, non-definitized awards to recipients in Red States for which DOE is not taking these actions.

And indeed, there are many similarly situated awards. The three awards were all issued under Funding Opportunity Announcement DE-FOA-0003256 for the Methane Emissions Reduction Program.[3] Over forty awards were issued under DE-FOA-0003256, with all awards similarly aimed at monitoring and mitigating methane emissions from the oil and gas sector. Eighteen of the DE-FOA-0003256 awards appeared on DOE's October termination list

---

[2] The Government Accountability Office (GAO) similarly explains that "an 'obligation' is some action that creates a legal liability or definite commitment on the part of the government, or creates a legal duty that could mature into a legal liability by virtue of an action that is beyond the control of the government. Payment may be made immediately or in the future." 2 Principles of Federal Appropriations Law, Ch. 7 at 7-3 (3d ed.).

[3] Dep't of Energy, Project Selections for FOA 3256: Methane Emissions Reduction Program Oil and Gas Methane Monitoring and Mitigation, https://www.energy.gov/fecm/project-selections-foa-3256-methane-emissions-reduction-program-oil-and-gas-methane-monitoring.

5

(including the CSU and GTI awards at issue here), and all of these were in states with two Democratic senators and that voted for the Democratic presidential candidate in 2024. All forty of the awards issued under DE-FOA-0003256 are on the list of more than 600 awards under review by DOE, but none of the awards that were to grantees in a state that voted for President Trump in the 2024 election were on the October termination list. The non-terminated awards to grantees in Red States are very similar to the awards listed for termination in Democratic states. For example, Award FE0032699 to CSU for $20 million to develop regional methane emission measurements closely aligns with a $20 million award to the University of Texas to develop regional methane emission measurements, which did not appear on the October termination list.

## DEFENDANTS' STATEMENT

In response to the Court's questions to Defendants presented at the close of the preliminary injunction hearing held on December 11, 2025 and the Court's Minute Order issued the same day, Defendants respectfully submit this Supplemental Filing.

### I. Introduction

In May 2025, the United States Department of Energy ("DOE") adopted the Secretarial Policy on Ensuring Responsibility for Financial Assistance. Defendants' Response to Plaintiffs' Motion for Preliminary Injunction at 3, ECF No. 14 ("PI Opp."). To implement this policy, DOE created a Department-wide process[1] of tasking DOE program offices with assessing their financial assistance portfolios against a number of criteria including, for example, whether a project remains technically and economically feasible; and whether, pursuant to 2 C.F.R. § 200.340(a)(4), a project continues to effectuate the purpose of the program or DOE's priorities. *Id*. Based on these criteria,

---

[1] This process is known as the Portfolio Review Process ("PRP").

6

proposals were individually evaluated and DOE decided whether to retain, modify or terminate awards. *See id*. This is an ongoing process. *Id*. at 4.

As part of this broad review process, DOE program offices made individualized determinations that a large number of awards should be terminated, and in October 2025, DOE announced that several hundred of those awards had been terminated. *Id*. at 5. This announcement included determinations under 2 C.F.R. § 200.340(a)(4) that the seven financial awards at issue in this case (Award Nos. EE0011131, EE0011801, EE0009951, EE0011133, EE0010930, EE0010622, and FE0032276) should be terminated because they no longer effectuate the purposes of the program for which they had been issued or DOE's priorities. *Id*. at 6-7.[2] DOE transmitted written notices regarding the termination of seven financial awards at issue in this case as part of an initial tranche of more than 300 notices in early October 2025. *Id*.

As outlined in 2 C.F.R. § 910.128, award recipients contesting a termination notice can avail themselves of informal dispute resolution, mediation, and a formal administrative appeal to the Senior Procurement Executive ("SPE"). *Id*. at 8-9. Pursuant to the informal dispute resolution process, award recipients can submit to a DOE contracting officer documentation challenging the termination. *Id*. at 9. Award recipients can also avail themselves of an administrative appeal to the SPE. *Id*. Administrative appeals are governed by 2 C.F.R. § 910.128(d) and Chapter 6.4.2(B) of the DOE Guide to Financial Assistance.[3]

---

[2] As explained below, DOE has not submitted any termination letters or emails associated with three awards at issue in this case (FE0032658, FE0032699, and FE0032657). *Id*. at 6 n.12. As explained during oral argument, these three awards are "conditional" cooperative agreements for which no final award has been definitized.

[3] *See* DOE Guide to Financial Assistance, https://www.energy.gov/management/articles/department-energy-guide-financial-assistance

**II.     Response to Questions**

    A.     *Status of Financial Award Funds at Issue in This Case.*

None of the funding for the ten financial awards at issue in this case,[4] including the three specifically mentioned in Part II.B. of this filing, has been de-obligated. Defendants are prepared to commit not to de-obligate funds with respect to these ten awards until final judgment has been entered in this case.

    B.     *Status of Awards FE0032658, FE0032699, and FE0032657*

DOE has not sent any termination letter or email with respect to awards FE0032658, FE0032699, and FE0032657. These three awards are conditional awards for the Methane Emissions Reduction Program. DOE transmitted selection notification letters for these conditional awards in December 2024. These letters informed the recipients that they had not yet been authorized to commence with performance of the project(s) at issue, and that DOE makes no commitment to issue an award and assumes no financial obligation. The letters also informed recipients that until an award is "definitized" and the recipient receives Grants Officer or Contracting Officer approval by way of an amendment to the award, DOE would not reimburse the recipient for any costs incurred under the project(s) at issue.

**III.     Factual Stipulation**

For the purposes of this litigation, Defendants stipulate not to contest the following factual assertion: The selection of which DOE grant termination decisions were included in the October 2025 notice tranche was influenced by whether a grantee's address was located in a State that tends

---

[4] Seven of the DOE financial awards at issue in this case are cooperative agreements, and three are "conditional" cooperative agreements for which no final award has been definitized: Award Nos. EE0011131, EE0011801, EE0009951, EE0011133, EE0010930, EE0010622, FE0032276, FE0032658 (Conditional Cooperative Agreement), FE0032699 (Conditional Cooperative Agreement), and FE0032657 (Conditional Cooperative Agreement).

to elect and/or has recently elected Democratic candidates in state and national elections (so-called "Blue States").[5]

## IV. Further Proceedings

Defendants join Plaintiffs' request that the Court consolidate this matter based on the stipulation above. In the event that the Court does not find Defendants' stipulation sufficient to adjudicate and enter final judgment in this matter, Defendants respectfully request that the Court schedule a conference later this week to discuss any remaining issues necessary to be resolved by Defendants' stipulation.

Dated: December 15, 2025                 Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar 1016621)
Stephen K. Wirth (D.C. Bar 1034038)
John Robinson (D.C. Bar 1044072)
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave. NW, Suite 301
Washington, DC 20016
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

*Counsel for Plaintiffs*

Vickie L. Patton (CO Bar 30370)*
Peter Zalzal (CO Bar 42164)*
Rosalie Winn (CO Bar 52662)*
Stephanie Jones (NY Bar 5590724)*
2060 Broadway, Suite 300
Boulder, CO 80302
(720) 837-6239
vpatton@edf.org

*Counsel for Plaintiff Environmental Defense Fund*

---

[5] Defendants reiterate their legal position that consideration of partisan politics is constitutionally permissible, including because it can serve as a proxy for legitimate policy considerations.

9

LYNDSEY OLSON
Saint Paul City Attorney

By: /s/ Kelsey McElveen
Kelsey McElveen[+]
Office of the City Attorney
15 W. Kellogg Blvd., 400 City Hall
Saint Paul, MN 55102
(651) 226-8710

*Counsel for Plaintiff Saint Paul, Minnesota*

*Pro hac vice forthcoming
[+]Pro hac vice pending


BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH BORSON
Assistant Branch Director
Federal Programs Branch


   /s/ Daniel Riess
JOHN BAILEY (Ohio Bar No. 104260)
Counsel to the Assistant Attorney General
DANIEL RIESS (Texas Bar No. 24037359)
ELIZABETH B. LAYENDECKER (Cal. Bar No. 357429)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-3098
Daniel.Riess@usdoj.gov
*Attorneys for Defendants*