IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - x
CITY OF SAINT PAUL, MINNESOTA,     CV No. 1:25-cv-03899-APM
et al.

       Plaintiffs,

v.                                 Washington, D.C.
                                   Monday, December 22, 2025
                                   4:15 p.m.

WRIGHT, et al.,

       Defendants.
- - - - - - - - - - - - - - - - - - x

_____

TRANSCRIPT OF STATUS CONFERENCE
HELD BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES VIA VIDEOCONFERENCE:

For the Plaintiffs:   Daniel F. Jacobson, Esq.
                      Stephen K. Wirth, Esq.
                      JACOBSON LAWYERS GROUP PLLC
                      5100 Wisconsin Avenue, NW
                      Suite 301
                      Washington, DC 20016
                      (301) 823-1148


For the Defendants:   Daniel Riess, Esq.
                      Joseph Borson, Esq.
                      U.S. DEPARTMENT OF JUSTICE
                      Civil Division, Federal Programs Branch
                      1100 L Street, NW
                      Washington, DC 20005
                      (202) 353-3098


Court Reporter:       Timothy R. Miller, RPR, CRR, NJ-CCR
                      Official Court Reporter
                      U.S. Courthouse, Room 6722
                      333 Constitution Avenue, NW
                      Washington, DC 20001
                      (202) 354-3111



Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

**P R O C E E D I N G S**

THE DEPUTY CLERK:  Your Honor, we are on the record in Civil Case 25-3899, City of Saint Paul, Minnesota, et al. v. Wright, et al.

Starting with plaintiffs' counsel, please introduce yourselves for the record.

MR. JACOBSON:  Good morning [sic], Your Honor. Daniel Jacobson for the plaintiffs.

THE COURT:  Mr. Jacobson.

MR. RIESS:  Good afternoon, Your Honor.  Daniel Riess for defendants and I'm here with Joey -- Joseph Borson, defendants.

THE COURT: All right.  Mr. Riess, Mr. Borson, welcome.

Okay, everyone.

Mr. Riess, you'll be happy to know that we had a fire drill just about 30 minutes ago.  So at least I scheduled mine not to interrupt our hearing.  So just keep that in mind for the future.

(Laughter.)

All right.  So I wanted to just gather everybody one last time before we forged ahead in light of certain dual filings that came across the transom on Friday where it would appear that some efforts to reach a, quote-unquote, stipulation have fallen short.

Let me say two things before getting to the merits -- not the merits, but the contents of the parties' positions.  The first is I want to be clear for the record that, you know, I have not -- although -- I suggested this as a course of -- possible course at the end of our preliminary injunction hearing in order to expedite things; that is, reaching a stipulation.  I certainly never meant to or wanted to convey to the parties that this was a -- something that was required.  And to the extent that anybody's left with that impression, I want to make sure that that is clear that that's not something I'm requiring.  And so to the extent that the plaintiffs have asked me to require or order the Government to read certain things or put certain things in writing, that's just not something I think I'm in a position to do and I don't think would be appropriate to do.

The second is that to the extent I used the word or contemplated the use of the word "stipulation," it was to -- it was the traditional use of the term which is that the parties would agree to a set of facts.  And at least as we're currently postured, we do not have a stipulation per se.  We have the defendants agreeing not to contest certain factual allegations which is really a -- sort of, a one- -- only a one-way stipulation, if you will.  The plaintiffs are not agreeing to the set of facts that the defendants have

offered.  Now, it may be, in fairness to the plaintiffs, that, you know, they are not in a position to, quote-unquote, stipulate to a set of facts because they don't have access to those facts, and I suppose that's fair. And so perhaps the best we can do is acknowledgement or some agreement not to dispute from the defendants, but I wanted to just make clear at least what I was envisioning was a jointly agreed upon statement of facts, which we do not presently have.

In terms of where we go from here, look, when we were done on Friday, I thought we had all, sort of, reached a point where we were in agreement as to two things.  One, what the legal construct was here both in terms of the -- what the plaintiffs would have to prove in terms of what the reason was that these grants were terminated.  The Government had agreed that the blue state/red state classifications were at least a reason, albeit not -- they didn't agree it was the reason.  And, importantly, that we -- that the Government had agreed that that would be sufficient to establish an equal protection violation if -- importantly -- if the Court can conclude that that kind of classification was not one that the Government could rely on in order to advance a legitimate state interest.

A couple of things and then I'll just turn it over to you all.  If we forge ahead with discovery, I want to

just make two observations.  The first is that it's not clear to me that -- if we did that, at the end of the day, the Government would still maintain that, one, a reason for the selection for the DOE grant terminations was this red state/blue state distinction; and, two, that if it is, in fact -- if that -- if -- say the record did show it was a reason; that that reason, if it was one of many, would not, then, necessarily -- even if that were to show, that that would not even necessarily support an equal protection violation.  In other words, I'm not sure that if we are in a world of discovery and, at a point somewhere down the road, that the Government would not be at liberty to say, "Well, we've now reevaluated our position."

So it's with those two thoughts that I, sort of, turn to plaintiffs' counsel and ask what you think you need more in terms of comfort.  I understand you'd like to have some of this in writing, but at least as I read the current record and having gone back and looked at the transcripts, the Government has effectively acknowledged the various things that you would ask be put in writing.  It's in the transcript, you know?  Counsel, I think, has not been coy about any of it.  I think Mr. Riess has been forthright in terms of what the Government's positions are and what they're willing to acknowledge.  And so let me just leave it there and then, Mr. Jacobson, we can figure out what to do

next.

MR. JACOBSON:  Thank you, Your Honor.

Yeah, from our perspective, I -- we think this shouldn't be -- because, like, it feels very close; right? It's just a couple of sticking points.  And, maybe, just talking about it today, you can help us, you know, close the gap.

The first thing, as Your Honor mentioned, is just the -- what I'll call the two sentences -- the two assertions in the Government's submission from Friday, just to make clear that those are not stipulated facts or facts that somebody else says that they're not contesting.  It's just assertions.  The Government is almost, like, you know, proffering or saying they won't, you know -- they don't contest that the evidence can show that.  I don't know what the right framing is.  And we're -- we would be saying, you know, even though we disagree with them like that, you know, it's not legally relevant or necessary to the case for us to litigate, sort of, the parts of it that we disagree with. We just wanted to be clear that we're not accepting those or stipulating to those as facts.  So I really think that could just be a matter of changing a couple of words.  It, you know -- the problem was, on Friday -- and I don't want to get into all the back-and-forth -- is we were told it was, quote, locked and, like, literally not a single word could

be changed.  And so we were in a position of being told we have to sign a piece of paper that included a stipulation to facts that we just didn't think were accurate and could prejudice us in the long-term.

So that's the first piece.  And then the second piece is just what the status quo ante was which is, obviously, something we talked about a lot at -- I can't even remember -- it was -- Thursday's hearing.  We reviewed the transcript and, you know, Your Honor said -- the things that we listed in our filing were things that Your Honor said.  And, you know, the Government didn't disagree with them, but they also didn't affirmatively state them, and we just wanted to -- that one issue -- just wanted the status quo ante to be on a piece of paper somewhere so that we can feel comfort that there's not going to be any, you know, things at the end of the day, if we are to prevail, where we're left and the Government says, "Well, you know, we never said that that's what you would go back to."

And that's all it is.  It's those two things.

THE COURT:  Okay.  Mr. Riess, your thoughts?

MR. RIESS:  Sure, Your Honor.  I mean, I guess I just want to say we're sorry that this is taking so much of the Court's time.  But I mean, the bottom line is if we take a step back, the purpose of this stipulation is, you know, let's resolve the major factual issues so we can avoid the

need for discovery and get this matter consolidated.  The Court said it needed some facts confirmed so it could resolve the merits and, as we said during the last conference, we believe we've stipulated to all the facts the Court needs to resolve this issue, and we don't think that plaintiffs really disagree with that.  What seems to be left -- and this seems to be confirmed by what Mr. Jacobson is saying -- is that we just have a question about legal issues or, I think -- or issues of form.  So let me take those in turn.

I mean, on the form, the proffer -- I mean, I think that the issue there was -- I mean, plaintiffs had been talking about a proffer.  We've been talking all along about a stipulation or an agreement not to contest.  And, you know, we think it's best to keep it as, you know, an agreement not to contest certain things.  We're willing to, you know -- to stipulate them and rather, you know -- but we believe that that should be sufficient here and that seems to be what the Court had indicated, as well.  So that's what -- the reason for that.

I mean, as far as the status quo ante, I think we made clear at the last hearing that, you know, we think the Court -- well, we had said any remedy here as to the seven awards should be limited to un-termination of the seven awards, but those awards continue to be controlled by the

awards' terms and conditions.  That's the status quo ante. And I think that's what the Court was saying, as well.  It said, you know, the -- I'm paraphrasing, but this is on Pages 22 and 23 of the transcript, you know:  "The remedy would be, essentially, the grants would be restored to the status in which they were at the day before the termination letters were received," and we agree with that.  So I, you know -- with those issues discussed, I think that the Court has all that it needs to resolve the merits and consolidate this.

THE COURT:  Okay.

MR. JACOBSON:  Your Honor -- oh, go ahead.  I'm sorry.

THE COURT:  Go ahead, Mr. Jacobson.  That's fine.

MR. JACOBSON:  I think, just going in reverse order, sort of, the words that Mr. Riess just used -- sorry -- Riess just used, sort of, to us, they're different than the words Your Honor used at the hearing on Friday in terms of what the status quo ante is.  And I'm not saying that in, like, a criticizing way.  I'm just saying that's why it was important to us to have it written -- in writing. Your Honor, at the hearing on Thursday, said the status quo ante is that, quote, the awards -- awardees were receiving money for and had access to and could draw down the grant money when they need it; that that was, sort of, the

situation, the way before, and that's different, what Government Counsel just said.  And so --

THE COURT:  Well --

MR. JACOBSON:  Yeah.

THE COURT:  -- technically -- let me be clear.  I mean, I will -- two things.  One is what Mr. Riess articulated is what I think of as the status quo ante; right?  In other words, you are restored to the position you were in before the Government took the action it did, one.

Now, as far as that second statement, Mr. Jacobson, I will tell you that I made that statement on the assumption that that was the status quo ante.  I don't profess to have any expertise on how grants work generally or how these grants work in particular.  I think this is my second or third grant case, and it's my understanding the way that these work is that there's an amount awarded and the grantee can, then, draw down the amounts of the award over the course of a term of the award, which is why I said what I said.  Now, if the terms of this grant are different than that, nothing I said can, you know, supplant the terms of the grant award.  And so I want to be clear as to why I used that language, because it was a supposition on my part that that's how this grant works that, you know, there's money available; you can draw it down, but if the terms of the grant are different, certainly nothing I can say, nor

anything Mr. Riess can promise, can change that.

MR. JACOBSON:  I fully agree as a matter -- as a legal matter, Your Honor.  And so I wasn't trying to say that, sort of, what Your Honor said is the answer or the correct legal answer here, I guess.  What we don't want to happen is we get in a situation where, you know, we were to prevail and then the Government says that, as a factual matter, the status quo ante was that these awards were already -- had already been put on ice two weeks earlier and this was just announcing it and, therefore, the status quo ante is that everything's closed off and that we will have given up our right to discovery to, basically, check what was the status quo ante in that situation.

THE COURT:  So I guess what I would say is as follows -- and I think I said this the other day -- which is I don't think anything I can -- or any relief I can grant at this point can do anything more than bar the government from making a termination decision on grounds other than an unconstitutional ground.  So if, let's say, hypothetically -- I can't remember -- the grants were terminated on October 3rd, I believe.  If it was true that on October 1, decisions had been made to terminate this grant and -- but on October 3rd the actual termination letters were sent along with termination letters that perhaps otherwise went out earlier than they should have or

grants were decided to be terminated when they actually hadn't been because they were all blue state grants, if I were to grant you relief, put you back into the status quo ante position, I'm not sure I can do anything about the fact that -- if it's true that the Department of Energy had already made a determination to terminate this grant.  It was just a matter of when, not if.  And if your concern is that the termination decision itself that is separate and apart from when it was announced was driven by red state/blue state considerations, that has not been -- that's not something, I think, the Government here today is stipulating to, and I do think if you do want to establish that, that would require some degree of discovery, unless Mr. Riess is prepared to make some stipulations or factual admissions that he thus far has not made.

MR. JACOBSON:  Yeah, I would --

MR. RIESS:  If the --

MR. JACOBSON:  Go ahead.  I'm sorry, Mr. Riess.

MR. RIESS:  That's all right.

I'm sorry.  Did you -- let's see.  I wasn't following the last -- just the very last portion of Your Honor's statement.

THE COURT:  No, my -- I was simply trying to say that the theory here has been that -- the theory here -- the theory has been that the grants were terminated; that is,

the date of termination and what drove that date of termination -- or not the -- but what drove the termination and when the termination was delivered -- that is, when it became effective -- was driven by this red state/blue state distinction.  What I hear Mr. Jacobson expressing the concern is that, well, if we restore the status quo ante, it would be possible that the DOE could come forward and say, "Look, we had already decided to terminate separate and apart from this blue state/red state distinction and that notwithstanding whatever relief the Court is granting, we are now" -- at some point after the Court were to enter the order -- "now terminating and following through on a perfectly legitimate basis."  My point was simply if the plaintiffs want to challenge the fact of the decision to terminate, that is something that I don't think you have been prepared to stipulate to; and, two, if you're not prepared to stipulate to it, that would require discovery to establish.

MR. RIESS:  I think we agree with that, Your Honor, but I think we were also in agreement that that's something that the Court doesn't need to resolve and, I guess, that's for at least two reasons, both of which we've represented in the past and that we stand by.  I guess, number one, we believe it's legally sufficient for the Court to determine that a primary reason for the announcement here

was the red state/blue state distinction.  And, I guess, number two, I think we're in agreement that as a matter of law, the -- a termination of an agency award of funds is effective when notice is given of the termination to the grantee.  So I think with both of those -- I mean, I believe everything is before the Court that, you know -- to make a decision and including as to, you know, what would be necessary to put plaintiffs in their rightful position.

THE COURT:  Mr. Jacobson, I leave it to you.  But I mean, that -- I was telling you personally.  I -- that is my view, but you're not required to share that view, of course.

MR. JACOBSON:  So I completely agree, as a matter of law, with that.  I think the issue is just if there is a disputed question of fact as to what the rightful position is in terms of if they were to open and we can draw down on it, like, the nanosecond after the Court rules, or is the DOE going to say the award is something else; that that was the rightful position pre actions challenged in this case?

I don't know, Your Honor.  This might be a terrible idea.  But, like, if there's a world in which we bifurcate liability and remedy here where if Your Honor was to rule for us, then the Government could just say what their position is on remedy at that point -- on, sort of, where we're going back to as the status quo at that point

and then we could see if we need, sort of, some sort of factual inquiries to resolve that at that point, but not at this point, if what I'm saying makes any sense.

MR. RIESS: If I could jump in here -- I mean, I, you know -- this is the first time we're entertaining this. I mean, I think it probably, you know, just makes sense for the Court to make its determination as to both, you know, liability and scope of remedy. I mean, I think the, you know -- the appropriate scope of remedy follows naturally from the nature of the claims that are at issue here. I think those dictate, you know, more or less, as a legal matter, you know, what the proper status quo ante is and what the plaintiffs' rightful position is. So --

THE COURT: Let's back up for a moment. Sorry to interrupt you. I mean, let's -- say this was an APA case; right? If this were an APA case, the remedy would be to vacate the termination decision as of October 2nd or whatever the date was that each of these plaintiffs received their notice. Full stop. I don't think I can do anything more. Truth be told, I think that's the remedy here, leaving aside this issue of prospective injunction about future terminations, but I don't think I can do anything more than, essentially, what I would do under the APA which is to vacate the terminations which would, then, put the plaintiffs in the same position as if they had never

received those letters, and once that judgment is entered, if the status quo permitted the plaintiffs to begin drawing down or drawing down funds, I think the Department of Energy would have to permit that.  If there were some other conditions, for example, that the plaintiff had to fulfill before they could withdraw funds, they would have to, you know, fulfill those conditions before DOE would have to provide the grant funds.  So again, I -- that's how I view this, which is that this is a lot like -- the remedy here would look a lot like what it would be if I were to determine that the award was arbitrary and capricious under the APA, which I recognize is not before me, but that's my construct.

Mr. Jacobson?

MR. JACOBSON:  Yeah.  I think that's a helpful way to think about it in thinking about it that way.  I think, maybe, where -- that crystalizes where the issue is, is that we and the Government might have -- may -- we don't know yet -- have different positions as to, like, what is the thing you're vacating.  Our view is that post, you know -- once the government shut it down, that's when the government made a final decision to terminate these and sent out the termination notices, and you would be vacating that. It seems, reading between the lines, that the Government's taking the position that the only thing you would be

vacating is the -- putting on a piece of paper a termination letter and emailing that out.  And so it seems like, maybe, that's where the tension is here that -- what is the action that Your Honor would be returning to pre status quo ante?

THE COURT:  Well, the -- let me turn it back to you.  And if we can't get to the bottom of this, then we'll just have to move forward.  But what is it that you would like to have defined in a remedy order that you think fills out the status quo ante in a way that an order that restores -- that, you know, quote-unquote, vacates the termination letters -- termination decision doesn't do for you?

MR. JACOBSON:  I think it would be the status -- it would go back to the status quo ante that these awards are open and, sort of, our grantees are able to perform unless and until the government decides to terminate them again for a lawful reason and effectuates that.

THE COURT:  Okay.  I'm happy to --

MR. JACOBSON:  I apologize.  I don't know -- I'm sorry if --

THE COURT:  No, that's okay.  Look, I'm happy to entertain that kind of language.  I just -- I'm, you know -- look, courts usually don't go further than that unless the parties are in agreement, and that's why we usually stop at "agency action is vacated."  And the reason I'm, sort of,

reluctant to go beyond that is I don't know what the details are in order to put this in an order that would be consistent with how this program works and what the terms of the grants are.  And so, you know, you all could, I suppose, come up with some language that might satisfy both of you, but I can't do that because I don't have enough information to do that, and I would feel very uncomfortable directing the government to do anything based upon the current record other than vacating the terminations.

MR. RIESS:  I think we're in agreement, Your Honor.

THE COURT:  Mr. Jacobson, I turn it back to you. And if you all want to contemplate this for another, you know, 12 hours, then, by all means, go ahead and do so, but --

MR. JACOBSON:  Yeah.

THE COURT:  -- if not, then let's go ahead and just continue forward.

MR. JACOBSON:  Your Honor, may I ask on the other issue we have discussed about the language of -- is it a stipulation?  Is it just assertions defendants are making? I mean, that feels totally solvable to me.  I just -- I can't represent my clients and sign a piece of paper that says we're stipulating to facts that I don't think are true. If there's just some way to tweak the language to make clear

or if, in -- Your Honor, in your opinion, you could just say, "Plaintiffs don't agree with these facts, but they accepted that they'll need more" -- or something just to make clear for the record --

THE COURT:  If you want to change the title to "Stipulation by Defendant Only" or "Defendants Only," does that take care of things?

MR. JACOBSON:  Yeah.  That's fine.  I think it's easier.  Something like that.  It's just -- I just need it to be clear on the record that plaintiffs don't agree to these facts.

THE COURT:  Okay.  Mr. Riess --

MR. RIESS:  That's fine.

THE COURT:  -- (inaudible) -- change --

MR. RIESS:  That's fine with us, Your Honor.

THE COURT:  Okay.  Good.  We've got one out of two out of the way.

All right.  Well, then, Mr. Jacobson, I take it you would like to just have a little bit more time to think about your position here.

MR. JACOBSON:  Yeah.  We can certainly get back to Your Honor --

THE COURT:  Okay.

MR. JACOBSON:  -- quickly.  If it's appropriate for me to ask, in, sort of, thinking about the alternatives,

is the alternative a schedule like the one we had previously discussed or is that -- still remains to be seen?

THE COURT:  I think the short answer is yes, but before I did that, I want to make sure, like, kind of, crystal clear on both sides -- from both sides that you are prepared to consolidate the injunction on the merits which, I believe, both sides are prepared to do -- let's leave this whole stipulation deal aside -- that you're prepared to do that and then both sides are prepared to move forward on an expedited basis and then, three, neither side will be asking for an evidentiary hearing or trial at the end of this.  So if those three things are all true, let me know and we can, then -- I can, then -- we can, then, at least, before we leave here today, have a schedule in place in the event that we are not going to proceed with the stipulation route.

MR. RIESS:  Your Honor, could I just interject? I -- let's see.  We're not entirely certain what the issue is that needs to be resolved with respect to the status quo ante.  I guess, number one, the question is, do we need to resolve that, you know, before the Court can consolidate and enter judgment on the merits?  The difficulty we foresee is that, you know, we appreciate, you know, the need to move forward in an expedited time frame, but as it stands right now, it's going to be extremely difficult to get answers, you know, from our clients and, you know, their upper

management in any expedited time frame.  We just know that as a fact.  We -- and that was -- I mean, that was part of the reason why we were trying to make clear, you know -- we weren't trying to be recalcitrant as to not making changes to the stipulation that we read to the Court.  That's just -- we are in -- then the, you know -- the busiest week of the year before the holiday week.  Now, we're in the holiday week, and it's just not going to be at all likely that we're going to be able to have our agency leadership sign off on any sort of, you know, major changes to this stipulation.  So if that is the case, is it necessary to reach agreement as to the status quo ante between the parties before the Court can move forward to consolidate and decide on the merits?  Because it seemed to us that the conditions you were talking about that the Court would be deciding, you know -- the terms and conditions and the grantees -- I mean, are really legal questions.  They're questions of contract law and of, you know -- of -- well, primarily of contract law here.  So we just don't see the need to add anything like that to, you know, what really here is a, you know -- a fact stipulation.

THE COURT:  Well, I guess, Mr. Riess, the rally border sits -- my, sort of, response is I -- yes.  Well, I -- all of this is a little bit unusual and this is a strange posture.  Again, I know I suggested it.  And because

it's a strange posture, I, for one, would be comfortable --
more comfortable ensuring that everybody is on the same page
and in full agreement, because the last thing I want to have
happen at the end of this is for there to be some suggestion
that, "Well, because of the rushed process, we've given up
this right," or, "We didn't see around this corner."  So
that's my reaction.  I mean, I think, as I -- if we were
living in a different world, I think what you say is
correct, but I -- just given the circumstances, I would feel
more comfortable if I had full sign-off from the plaintiffs.

MR. RIESS:  Just to be clear, then, Your Honor --
I mean, we're fine with, on the one, changing this to
"Stipulation by Defendants."  That's no problem with us.
What specifically is necessary in the Court's mind to add or
change to the existing stipulation other than that?

THE COURT:  So this is when I say it's not in my
mind; it's in Mr. Jacobson's mind.  I think I would leave it
to him to articulate what more either you would need to say
on the record unequivocally or put down in writing to
satisfy the plaintiffs of whatever remaining concerns they
have.

So I have -- Mr. Jacobson, I -- what I've --
leave it at -- again, if you want to think about it
overnight, pose something to Mr. Riess, you know?  If he's
not prepared to put it in the stipulation, we can get back

on the record tomorrow so he can formally say whatever you think is appropriate to ensure the Government is locked into a particular position, but, you know, we've talked about this a fair amount and we just need to, you know, move forward or come up with an alternative plan.  Okay?

MR. JACOBSON:  Appreciate it, Your Honor.  We will get back to Your Honor as soon as we can.  I think I can leave it at that.

THE COURT:  Okay.  All right.  Well, let me just at least put a deadline on this, because -- can you all just let us know one way or another by noon tomorrow.

MR. JACOBSON:  Absolutely.

THE COURT:  All right.  Great.

MR. RIESS:  To be clear, Your Honor, that's, you know, whether or not -- plaintiffs are going to be proposing language about status quo ante and whether, you know, defendants are willing to add that to the stipulation; is that the -- what we're deciding?

THE COURT:  Yes, or if you're not prepared to put it in the stipulation formally, whether you are prepared to orally make representations that will give Mr. Jacobson comfort to the same degree he would have if it was in a stipulation.  And, again, if we need to get on the record, we can do that tomorrow --

MR. RIESS:  Okay.

THE COURT:  -- so that there's no ambiguity about where things are.

MR. RIESS:  Okay.

THE COURT:  All right.  So -- all right.  So you all just go ahead and contact chambers tomorrow and let us know where things are, and if we need to get on the record, then just let us know and we can convene tomorrow afternoon to do that.

In the event there is no agreement and that's the report I get tomorrow -- let me go back to where we were just a moment ago which is to say -- just to confirm that everybody's in agreement as to, sort of, the three conditions that I've laid out if there's no agreement on this stipulation approach which is, one, everybody's in agreement on consolidation; two, that discovery would proceed on an expedited time frame; and, three, that there will be no request for an evidentiary hearing or trial at the end of this.

MR. JACOBSON:  The only qualification I would have, Your Honor, is that assuming that the Government consents to submitting, you know, declarations and transcripts in lieu of testimony, yes.  In other words, just as long as we're able to submit evidence via a forum other than an evidentiary hearing.

THE COURT:  Well, what I would -- just to take

this a step further, because I would contemplate that we would have, you know -- we would, then, essentially, be in a posture of summary judgment and, obviously, that could include portions of what would be comparable to an administrative record if this were an APA case.  You do have the option, of course, in this case to take depositions if you want to take depositions.  Obviously, if Mr. Riess's clients want to submit declarations, that's appropriate, as well.  But you're talking about a lot of discovery and some amount of writing on a fairly compressed time frame.

MR. RIESS:  Who am I to say, Your Honor?  I mean, you know, that's going to be difficult, obviously, as I think Your Honor is aware, but, you know, for our clients especially, you know, given what time of year it is --

THE COURT:  Sure.

MR. RIESS:  I think -- while we're here, can I, you know -- can I simply ask, if there is some, you know, past representation that, you know -- that we've made during the hearing or, you know -- or in our brief that, you know -- that the Court or that plaintiffs, you know, would like us, you know, to explain that we stand by -- I mean, I believe we stand by all our, you know, prior representations in this case and we honestly just, you know -- we're not sure what, you know, really the issue is as to why, you know, we're not able to just consolidate and move forward

with final judgment.

MR. JACOBSON:  So on that, if it helps clarify, the three things, Mr. Riess, are the three things we put into our filing -- Page 7 of our filing Friday night which are just the depictions of what the status quo ante was, essentially, from the hearing which was what Judge Mehta had said.  So it wasn't a representation by the Government, but if the Government can represent that it does not contest or would not contest those three things, then I think we would be all set.

(Brief pause.)

MR. RIESS:  I -- let's see.  I'll look at that, but I -- I'm sorry to put him on the spot, but I think Mr. Borson may have a question about the discovery here.

(Brief pause.)

MR. BORSON:  Sorry.  I would apologize.

The only observation I would note is that it seems like the parties are 98 percent in agreement and possibly actually 100 percent in agreement.  And so to the extent that the goal is to move this case towards a final judgment quickly, you know, if this is something that can be solved with one or two interrogatories and the form is an issue, it seems like that is -- that might be the most efficient rather than having burdensome discovery which, you know, we would have to take back to our clients about whether that's

something they could agree to or what appears to be a narrow and possibly technical dispute about what precisely rescinding the October 2nd or October 3rd termination letter actually means.  So I would put forward only that one point that, you know, I think there may be a middle ground that would be appropriate if the parties can't reach a stipulation but between, you know, full merits discovery that would be burdensome on everyone and probably not actually change the dial very much.  And so I would just, you know, note that for the parties and the Court that, you know, obviously, we will work hard to get to an agreement on this, but this also seems like something that a very narrow, targeted discovery amount would resolve that, as well.

THE COURT:  I appreciate the creativity, and if that's something that could move the ball forward, I certainly would welcome that.

MR. RIESS:  If it helps, Your Honor, I was reviewing the three statements that plaintiffs made and I can respond to them.

So I guess, number one, as we have previously represented, we agree that the status quo in -- ante in this case is that the seven definitized awards here were not terminated.

I guess, number two, we agree, as we've just said, a grant is not terminated until the grantee has been sent

notice that the grant has been terminated.  That's, you know -- we're in agreement on that.

The -- Question C is what, you know -- the remedies in this case plaintiffs would have if they were to prevail.  I mean, I think that's a legal question, honestly. And the question about whether, you know, the status quo ante is whether, you know, the awardees could draw down the grant money, you know, when we need it, those are legal questions.  They turn on, you know, a question of, you know, contractual law.  If the Court, you know, needs them, you know, I don't think there would be any obstacle to submitting the relevant, you know, contractual documents here, but --

THE COURT:  Let me --

MR. RIESS:  I think --

THE COURT:  Hang on.  Let me go back to what I said earlier, which is the source of that statement is, I believe, me, and that was nothing more than a presumption on my part about how this stuff works.  Okay?  And so that's why I said what I said, not to say -- not to suggest that that, in fact, constitutes the, quote-unquote, status quo ante.  Simply an observation of what, I believe -- how these grants work.  I don't want to, frankly, say anything in an order, if it's appropriate and if it's merited, that would say anything more than just the terminations are vacated

which would, then, mean the awards are restored under the terms and conditions that existed before the termination. What those terms and conditions are, I have no idea. Okay? I assumed it allowed you to draw down. That may not be the case. And, again, I just was spitballing.

So Mr. Jacobson, if what you would like is some language that is consistent with what I just said, which is -- again, we're talking about remedy before liability's been even determined. So this is all very uncomfortable. But, you know, something to the effect of, "The awards are vacated and restored subject to the terms and conditions as they existed on such and such date" -- I mean, I could get behind that, because I don't think that's saying anything more than the awards are vacated.

MR. JACOBSON: I have a response to that, Your Honor, but also, maybe, one suggestion, picking up on Mr. Borson's idea. The suggestion would be perhaps we can just service and go RFA today on what the status quo ante was, and if the Government can either admit it or not admit it, but that, you know -- if they can't admit it, that would, maybe, solve all these issues.

I guess, Your Honor, I'm still -- what I'm struggling with is -- Your Honor's power, I agree, is just to say, you know, "I'm restoring things to the status quo ante," but if there's a disputed fact over what that was and

the Government, at the end of the day, would just be able to say, "We say the fact is that it was X," and we don't have any chance to challenge that because we're after a final judgment already, that does affect the ultimate relief we -- it affects what it means to go back to the status quo ante. Like, what is the Court ordering us to go back to, it seems like itself, could be a -- become a disputed factual question which is, like, the type of thing we would take discovery on potentially if we had discovery so we knew, sort of, what is the exact relief we're seeking in the case.

THE COURT:  Look, I'm already over my skis, so to speak, here talking about relief before we even get to liability.  So I will leave it to you all at this point to continue your conversations, get back to us tomorrow.  If the solution here is -- we'll change the title of the stipulation.  Mr. Riess has now agreed to two of the three items that you had concerns about.  And if the third can be resolved by, you know, limited narrow discovery pending the outcome of decision, particularly if whatever that discovery entails has no bearing on liability, then we can go forward and do what we need to do and resolve the matter while you all, you know, engage in this limited discovery process, but if that's not where we are, then, you know, we'll just have to enter a discovery order and go from there.  Okay?

MR. JACOBSON:  Appreciate it, Your Honor.  We will

take that in mind and get back to you ASAP.

THE COURT:  I guess I would say that if this is not going to get resolved and we are going to move into discovery, then I'd ask you to come up with schedules for discovery.  I suspect you won't agree.  And then, sort of, propose to me what, you know -- give me your proposals and I'll figure out what the right way forward is.  Okay?

MR. JACOBSON:  Your Honor, could I just make sure I understand what you just said to make sure --

THE COURT:  Mm-hmm.

MR. JACOBSON:  The -- one option you offered, I think, just now is, maybe, the parties could go forward with targeted discovery on this one issue while Your Honor is deliberating upon and deciding liability; is that -- did I hear that correctly?

THE COURT:  I think so, because at least what I've heard you say is that the last issue is about status quo ante which has to do with scope of remedy; right?  So if that's true, then based on the other agreements we had in place, it seems like I can go forward on liability while you all work on this parallel track of whatever limited discovery you agree to.  Okay?  If that's not -- if your limited proposed discovery has a bearing on liability, then I can't move forward.

MR. JACOBSON:  Understood.

THE COURT:  Okay.  So that's Track 1 or Possibility 1.  I guess there's three possibilities.  One is the Court moves forward on liability and you move forward on this limited discovery that is entirely remedy related, one; two, the other possibility is that the limited discovery you are seeking is liability related and I'm not going to move forward until that discovery is resolved; or, three, we can't reach agreement as to any of this and it's full-blown discovery and moving on to, you know -- moving on to that phase.

MR. JACOBSON:  Thank you, Your Honor.  I appreciate it and I appreciate all your time today.

THE COURT:  Okay.  All right.  Just get back to us and, you know, we'll go from there.

Thanks, everyone.

MR. RIESS:  Thank you, Your Honor.

MR. BORSON:  Thank you, Your Honor.

(Proceedings concluded at 6:08 p.m.)

* * * * * * * * * * * *

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability, dated this 23rd day of December 2025.**

/s/Timothy R. Miller, RPR, CRR, NJ-CCR
Official Court Reporter
United States Courthouse
Room 6722
333 Constitution Avenue, NW
Washington, DC 20001