**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITY OF SAINT PAUL, MINNESOTA, *et al.*, <br><br>       *Plaintiffs*, <br>   v. <br><br> CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy, *et al.*, <br><br>       *Defendants*. | Case No. 1:25-cv-3899-APM |

**PLAINTIFFS' REQUEST FOR PERMANENT INJUNCTIVE RELIEF**

Pursuant to the Court's January 16, 2026 minute order, Plaintiffs request that the Court enter a permanent injunction when entering final judgement in this case, as follows:

> Defendants are permanently enjoined from treating awards for which Plaintiffs are prime grantees, subrecipients, or beneficiaries differently from similarly situated awards, based on the fact that Plaintiffs (and/or the relevant prime awardees) reside in a "Blue State," *i.e.*, a state that tends to elect and/or has recently elected Democratic candidates in state and national elections.

Such an injunction is appropriate to ensure that Plaintiffs receive complete and effective relief for the constitutional violations established in this case, and to prevent identical future constitutional violations. Plaintiffs face a substantial risk that the Defendants will re-terminate or take other adverse actions regarding the awards at issue in this litigation, or other awards with which Plaintiffs are affiliated, based on whether the awardee is in a Blue State. As explained below, a declaratory judgment and vacatur of the October 2025 terminations would not protect Plaintiffs from these future harms, and without an injunction, Defendants may attempt to circumvent the Court's ruling. *See eBay Inc. v. MercExchange L.C.C.*, 547 U. S. 388, 391 (2006).

1

*First*, Plaintiffs face a substantial risk that Defendants will perpetrate the same or similar equal protection violations with respect to the awards at issue in this litigation, or other awards held by Plaintiffs or with which Plaintiffs are affiliated. Defendants "transparently admit that a primary reason for their grant-termination decisions was the grantees' location in Blue States." Op. 12; *see* ECF 27 at 2. And Defendants have continued to engage in the same conduct in similar contexts. On January 6, 2026, the Administration sent letters to six Blue States notifying them that billions of dollars in social services and welfare funding would be frozen—because they were "Democrat-led states," and purportedly inherently susceptible to fraud because they were "Democratic-led."[1] On January 22, after this Court's decision, OMB (a Defendant in this case) demanded that nearly ever federal agency provide OMB data on federal spending in fourteen Blue States, and only those states, for a purported review.[2] And with respect to the awards at issue here specifically, Defendants have represented that the Department of Energy is engaged in an "ongoing review process" of selecting awards for termination. ECF 14 at 1. There is every reason to believe that Defendants will continue to target Plaintiffs and other funding recipients because they reside in Blue States, and Plaintiffs should not have to play whack-a-mole to challenge each iteration of the same unlawful conduct.

A declaration that the October 2 terminations were unlawful would not, by its own force, prevent Defendants from issuing new unlawful terminations of the same awards, on the same unlawful basis. As the Court stated at the December 22, 2025 status conference, the effect of backward-looking relief would be only that "the terminations are vacated[,] which would, then,

---

[1] Minho Kim, *Health Dept. Freezes $10 Billion in Funding to 5 Democratic States*, N.Y. Times (Jan. 6, 2026), https://www.nytimes.com/2026/01/06/us/politics/child-care-funding-cuts-trump.html.

[2] Gregory Svirnovskiy, *Trump administration targets 14 blue states, DC with federal funding review*, Politico (Jan. 22, 2026), https://www.politico.com/news/2026/01/22/trump-administration-federal-funding-blue-states-00741440.

mean [that] the awards are restored under the terms and conditions that existed before the termination." 12/22/2025 Status Conf. Tr. 28:25–29:2. That leaves Defendants free to subsequently re-terminate the awards (or to terminate other awards) for the same unlawful reasons. Indeed, the Solicitor General recently told the Supreme Court that the Department of Justice does not treat the *opinions* of the lower courts as binding, only their judgments, and that the government may choose to disregard even circuit precedent within a circuit, should it disagree with that precedent. *See* Oral Arg. Tr. 60:15–63:15, *Trump v. CASA, Inc.*, Nos. 24A884, 24A885, 24A886 (U.S. May 15, 2025).

Here, Defendants have steadfastly maintained that it is lawful—and normal—for the government to base award-termination decisions on the awardee's residence in a Blue State. *See* 12/11/2025 Hr'g Tr. 55:3–59:25. Defendants' counsel repeatedly asserted that the President could, consistent with the government's view of the Constitution, "terminate every grant in a state that did not vote for [him]," and repeatedly asserted that such political discrimination is "fundamental [to] how the way the system works." *Id.* at 55:3–9, 59:25; *see id.* at 57:11–22. Indeed, the first words spoken by Defendants' counsel at oral argument were that "it's a fundamental feature of our representative democracy that the government's discretionary funding decisions may be influenced by geographic or political considerations." *Id.* at 33:25–34:3. The government's commitment to this "categorical position" (Op. 12) makes clear that there is a substantial risk that Defendants will continue to make funding and termination decisions based on awardees' residence in Blue States.

*Second*, the harm caused by such unlawful terminations is not remediable at law, such as by an award of money damages. *See eBay*, 547 U.S. at 391. Congress has not provided a mechanism for plaintiffs to obtain money damages in district court for the constitutional violations established here. *Cf.* 5 U.S.C. § 702 (authorizing only "relief other than money damages"). And

Defendants have conceded that Plaintiffs cannot bring equal protection claims in the Court of Federal Claims. *See, e.g.,* Hr'g Tr. 58:11–59:4.

*Finally*, the balance of the equities and public interest support entry of a permanent injunction. "The Constitution is the ultimate expression of the public interest," and "consequently, government actions in contravention of the Constitution are 'always contrary to the public interest.'" *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 386 (D.D.C. 2020) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)); *see Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 897 F.3d 314, 335 (D.C. Cir. 2018) ("[T]he public interest favors the protection of constitutional rights."). Stopping the unconstitutional targeting of Plaintiffs and grantees based on their residence serves the public interest in two ways: The public has an overriding interest in ensuring that the federal government administers its programs "evenhandedly and not based solely on … political viewpoint, or associations or perceived associations with a particular political movement, position, or viewpoint." *True the Vote, Inc. v. Internal Revenue Serv.*, 2019 WL 2304659, at *5 (D.D.C. May 30, 2019), *reconsideration granted in part*, 2020 WL 5656694 (D.D.C. Sept. 23, 2020). And the public will benefit from these awards' goals of lowering the cost of energy, expanding access to clean, affordable energy, and ensuring healthier lives by reducing pollution. *See* ECF 8-1 at 25–26. The government, on the other hand, cannot assert that it suffers any harm in being enjoined from violating the Constitution.

*    *    *

For the foregoing reasons, the Court should enter a permanent injunction.

Dated: January 30, 2026

Respectfully submitted,

/s/ Daniel F. Jacobson
Daniel F. Jacobson (D.C. Bar 1016621)
Stephen K. Wirth (D.C. Bar 1034038)
John Robinson (D.C. Bar 1044072)
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave. NW, Suite 301
Washington, DC 20016
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

Counsel for Plaintiffs

Vickie L. Patton (CO Bar 30370)*
Peter Zalzal (CO Bar 42164)*
Rosalie Winn (CO Bar 52662)*
Stephanie Jones (NY Bar 5590724)*
2060 Broadway, Suite 300
Boulder, CO 80302
(720) 837-6239
vpatton@edf.org

Counsel for Plaintiff Environmental Defense Fund


IRENE KAO
Saint Paul City Attorney

By: /s/ Kelsey McElveen
Kelsey McElveen[+]
Office of the City Attorney
15 W. Kellogg Blvd., 400 City Hall
Saint Paul, MN 55102
(651) 226-8710

Counsel for Plaintiff Saint Paul, Minnesota

*Pro hac vice forthcoming
[+]Admitted pro hac vice

5