**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITY OF SAINT PAUL, MINNESOTA, et al., ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 25-cv-03899 (APM) |
| CHRISTOPHER WRIGHT, *in his official capacity as Secretary of Energy*, et al., ) ) ) ) | |
| Defendants. ) ) | |

**<u>MEMORANDUM OPINION</u>**

**I.**

Plaintiffs are awardees and subawardees of environmental project grants from the United States Department of Energy (DOE) who filed this suit challenging Defendants' decision to terminate their grants.[1]  The court concluded that the terminations violated the Fifth Amendment's guarantee of equal protection of the laws and accordingly vacated them.  *City of Saint Paul, Minnesota v. Wright*, No. 25-cv-03899, 2026 WL 88193 (D.D.C. Jan. 12, 2026).  But the court reserved judgment as to Plaintiffs' request for prospective injunctive relief until the parties fully briefed the issue.  *Id.* at \*9.  The court now denies Plaintiffs' Request for Permanent Injunctive Relief, ECF No. 30 [hereinafter Pls.' Request].

---

[1] Plaintiffs are the City of Saint Paul, Minnesota; Interstate Renewable Energy Council; Plug In America; Elevate Energy; Southeast Community Organization; and Environmental Defense Fund.  Defendants are DOE; Secretary of Energy Christopher Wright; the Office of Management and Budget (OMB); and Director of OMB Russell Vought.

**II.**

The court detailed its findings of fact and legal conclusions in its earlier opinion and does not reproduce them in full here. *See generally City of Saint Paul*, 2026 WL 88193. The court provides only a brief recount to contextualize Plaintiffs' current request.

At issue are seven of Plaintiffs' grants, totaling $27.6 million to support various environmental projects. *Id.* at *1. On October 1, 2025, just after a government shutdown began, Director of the Office of Management and Budget (OMB) Russell Vought posted on X that "[n]early $8 billion in Green New Scam funding to fuel the Left's climate agenda is being cancelled" and listed several states that would be targeted for cuts. *Id.* at *2 (alteration in original). President Donald Trump also posted on Truth Social that he had met with Director Vought to "determine which of the many Democrat Agencies, most of which are a political SCAM, he recommends to be cut" during the shutdown. *Id.* DOE then issued a press release stating that it had terminated over 300 grants for their failure to align with the Administration's energy priorities. *Id.* Termination letters—albeit with some irregularities—quickly followed. *Id.*

"The terminated grants had one glaring commonality": other than one grantee located in Canada, all "were based in states whose majority of citizens casting votes did not support President Trump in the 2024 election." *Id.* at *2 & n.6. Defendants admitted that "[a] primary reason for the selection of which DOE grant termination decisions were included in the October 2025 notice tranche was whether the grantee was located in a 'Blue State'"—a state that "'tend[s] to elect and/or recently elected Democratic candidates in state and national elections,' including for President of the United States in 2024." *Id.* at *2 (first alteration in original) (citations omitted). The terminated grants were otherwise "comparable" to awards to grantees in so-called "Red States," the majority of whose voters supported President Trump in the 2024 election. *Id.* at *3.

The court concluded that Defendants' grant-termination decisions violated the Fifth Amendment's guarantee of equal protection of the laws.[2] *Id.* at *5–7. The classification Defendants drew—between grantees located in Blue States and comparable grantees located in Red States—was not rationally related to the asserted legitimate government purpose of "administering grant programs consistent with the agency's priorities." *Id.* at *5. "Without more, there is no reason to believe that terminating an award to a recipient located in a state whose citizens tend to vote for Democratic candidates—and, particularly, voted against President Trump—furthers the agency's energy priorities any more than terminating a similar grant of a recipient in a state whose citizens tend to vote for Republican candidates or voted for President Trump." *Id.* The court therefore vacated the terminations, *id.* at *9, and Defendants have since reinstated Plaintiffs' awards, *see* Defs.' Mem. in Opp'n to Pls.' Request, ECF No. 31 [hereinafter Defs.' Opp'n], at 4; Defs.' Opp'n, Ex. 1, ECF No. 31-1 [hereinafter Ex. 1].

Plaintiffs also had asked the court to "permanently enjoin the Challenged Terminations." Compl., ECF No. 1, at 24. The court noted that, to be entitled to such relief, Plaintiffs had to demonstrate a "sufficient likelihood of *future* injury." *City of Saint Paul*, 2026 WL 88193, at *9 (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024)). Because the parties had not yet briefed the issue, the court requested further submissions before ruling. *Id.*

The court now considers Plaintiffs' request for the court to order that:

> Defendants are permanently enjoined from treating: (1) the seven awards at issue in this case, and (2) other awards for which Plaintiffs are prime grantees or known subrecipients differently from similarly situated awards, primarily or exclusively based on the fact that Plaintiffs (and/or the relevant prime awardees) reside in a "Blue

---

[2] The court concluded that Plaintiffs lacked standing to assert their related First Amendment claim. *City of Saint Paul*, 2026 WL 88193, at *7–8.

State," i.e., a state that tends to elect and/or has recently elected Democratic candidates in state and national elections.

Pls.' Reply in Supp. of Pls.' Request, ECF No. 32 [hereinafter Pls.' Reply], at 4.

### III.

The court's analysis starts and ends with standing. Although neither party raised the issue, "the court has an independent obligation to assure that standing exists." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

To demonstrate standing for forward-looking relief, "plaintiffs must show that they face an imminent threat of future injury." *In re Navy Chaplaincy*, 697 F.3d 1171, 1175 (D.C. Cir. 2012); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). The threat cannot be "speculative." *Lyons*, 461 U.S. at 109. And "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 102 (alterations in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). At this stage, on summary judgment, a plaintiff must prove standing with evidence, not mere allegations. *See Food & Water Watch v. U.S. Dep't of Agric.*, 1 F.4th 1112, 1116 (D.C. Cir. 2021).

Plaintiffs claim that they face "a substantial risk that Defendants will perpetrate the same or similar equal protection violations with respect to the awards at issue in this litigation, or other awards held by Plaintiffs or with which Plaintiffs are affiliated." Pls.' Request at 2. But they have not shown they face an "imminent threat" of such future injury.

To start, any "[p]ast exposure to illegal conduct" that lacks "continuing, present adverse effects" does not support standing. *Lyons*, 461 U.S. at 102 (alteration in original) (citation omitted). Plaintiffs note that Defendants "transparently admit that a primary reason for their grant-termination decisions was the grantees' location in Blue States." Pls.' Request at 2 (quoting *City*

*of Saint Paul*, 2026 WL 88193, at *6). Plaintiffs also emphasize the "categorical position" Defendants took throughout this litigation that it is lawful to terminate grants based on political considerations. *See id.* at 3 (citation omitted). Both, Plaintiffs reason, suggest that Defendants will continue to make grant-related decisions based on the same impermissible classification. *See id.* But once the court vacated the terminations, Defendants reinstated Plaintiffs' grants. Defs.' Opp'n at 4; Ex. 1. And Plaintiffs do not contend that, following reinstatement, there are continuing adverse effects from the initial violation. True, the reinstatement letters "do not represent a binding, enforceable, or irrevocable commitment not to repeat the constitutional violation," and Defendants have not otherwise made such a commitment. *See* Pls.' Reply at 2–3. The lack of such a commitment, however, does not demonstrate a "real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 102 (quoting *O'Shea*, 414 U.S. at 496).

The affirmative evidence Plaintiffs offer does not support a risk of future harm, either. They assert that "Defendants have continued to engage in the same conduct in similar contexts," pointing first to a set of letters the Department of Health and Human Services sent to "six Blue States notifying them that billions of dollars in social welfare funding would be frozen." Pls.' Request at 2 & n.1. Another agency's funding decisions as to other grantees, however, do not establish that *Plaintiffs* face a concrete threat of imminent injury by *these Defendants*. Even if, as Plaintiffs argue, it might be "naïve[]" to think otherwise given what they characterize as the Administration's "continuing, cross-agency policy of targeting Blue States," the most Plaintiffs state is that this fact "makes it more likely that DOE will try again here." Pls.' Reply at 3–4 (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)). But their mere subjective assessment of a greater likelihood of injury is not enough to establish standing for prospective relief.

Plaintiffs also point to Defendants' ongoing funding reviews that they argue "give[] Defendants a convenient vehicle to re-terminate the awards at issue in this litigation for the same unlawful reasons." *Id.* at 3. Specifically, OMB has requested that other agencies provide it with "data on federal spending in fourteen Blue States, and only those states, for a purported review." Pls.' Request at 2. And DOE is still engaged in an "'ongoing review process' of selecting awards for termination." *Id.* (quoting Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 14, at 1)). But even if these reviews were to result in some grant terminations, Plaintiffs provide no evidence that it will happen to *them* based on the same improper classification used previously. These reviews thus are not evidence of a "real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 102 (citation omitted).

Plaintiffs accordingly lack standing to seek prospective injunctive relief.

**IV.**

For the foregoing reasons, Plaintiffs' Request for Permanent Injunctive Relief, ECF No. 30, is denied. A final, appealable order accompanies this Memorandum Opinion.

Dated: April 3, 2026

Amit P. Mehta
United States District Judge

6